IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                       No. 5:15-CR-3947 RB

MIA COY CAMPBELL,

      Defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

**THIS MATTER** is before the Court on Defendant's Motion to Suppress. (Doc. 21.) The Indictment charges Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 13.) During the execution of an arrest warrant for Defendant, law enforcement agents observed the firearm in a tool bag in the back yard of a house located at 209 Fabian Road in Carlsbad, New Mexico. Law enforcement agents obtained a search warrant for the residence and its curtilage and seized the firearm pursuant to the search warrant.

      Defendant contends that the firearm should be excluded because the search leading to the discovery of the firearm violated the Fourth Amendment and the search warrant was based on the unlawful search and therefore unsupported by probable cause. (Doc. 21.) The United States responds that Defendant lacks standing to raise a Fourth Amendment challenge, the firearm was discovered pursuant to the plain view exception to the warrant requirement, and the search

warrant was supported by probable cause. (Doc. 30.) In his reply, Defendant asserts that he has standing and Agent Whitzel was not lawfully in the back yard when he observed the firearm. (Doc. 32.) The Court held a suppression hearing on March 1, 2016. Having carefully considered the submissions and arguments of counsel and the evidence adduced at the suppression hearing, and being otherwise fully advised, the Court finds that Defendant has standing and **DENIES** Defendant's motion.

## FINDINGS OF FACT

Rule 12(d) of the Federal Rules of Criminal Procedure provides that when factual issues are involved in deciding a motion, the Court must state its essential findings on the record. *See* Fed. R. Crim. P 12(d). The Court makes the following factual findings based on the evidence adduced at the suppression hearing. At the hearing, the Government called three witnesses: Pecos Valley Drug Task Force Agent Jorge Martinez, Pecos Valley Drug Task Force Agent David Whitzel, and Pecos Valley Drug Task Force Agent Luis Ortega. The Court admitted Government's Exhibits 1–14 without objection.

1. Agent Martinez is an employee of the Artesia Police Department assigned as an agent to the Pecos Valley Drug Task Force. Agent Martinez has ten years of experience as a law enforcement officer and he has been assigned to the Pecos Valley Drug Task Force for three years.

2. Agent Whitzel is an employee of the Carlsbad Police Department assigned as an agent to the Pecos Valley Drug Task Force. Agent Whitzel has been a law enforcement officer for fifteen years and he has been assigned to the Pecos Valley Drug Task Force since 2011.

3. Agent Ortega is an employee of the Eddy County Sheriff's Office assigned as an agent to the Pecos Valley Drug Task Force. Agent Ortega has been a law enforcement officer

for over four years and he has been assigned to the Pecos Valley Drug Task Force for about a year.

4.      On September 24, 2015, at approximately 9:00 a.m., Agents Martinez, Whitzel, and Ortega were working with agents from the Federal Bureau of Investigation and United States Marshal's Service to locate and arrest Defendant.  The Federal Bureau of Investigation had requested assistance from the Pecos Valley Drug Task Force to execute an arrest warrant for Defendant.

5.      After the agents were unable to locate Defendant at two different addresses, Sergeant Lenin Leos received information from the Eddy County Sherriff's Department that Defendant might be at 209 Fabian Road.  Eight or nine law enforcement agents from the United States Marshal Service, the Federal Bureau of Investigation, and the Pecos Valley Drug Task Force arrived at the residence, which is a stone house with a fenced back yard.  (Gov't Ex. 1.)

6.      The agents parked a short distance away and walked toward the house.  As they approached the home at 209 Fabian Road, the agents diverged into smaller groups to partially surround the residence.  Agent Martinez and Agent Whitzel went to the north side of the house. (Gov't Exs. 2 and 3.)

7.      When Agent Martinez arrived at an open gate to the back yard, he encountered Defendant walking from an open-sided shade canopy toward the open gate.  (Gov't Exs. 5 and 6.)  From the open gate, Agent Martinez could see most of the back yard, including the canopy about twenty feet from the gate.  (*Id.*)  A wooden fence enclosed the back yard on the south and west sides.  (Gov't Exs. 1, 2, 5–9.)

8. Agent Martinez ordered Defendant to get on the ground, Defendant complied, and Agent Martinez arrested Defendant in the area between two stacked tires and a concrete walkway about five to ten feet inside the open gate. (Gov't Exs. 5 and 6.)

9. After Agent Martinez secured Defendant, agents found an open box of Marlboro cigarettes in Defendant's pocket.

10. The agents performed a sweep of the outside of the house for safety purposes. Agent Whitzel walked through the open gate into the back yard and proceeded toward the south side of the house. (Gov't Ex. 6.) Agent Whitzel observed an overgrowth of weeds in the back yard on the south side of the house and checked to make sure that no one was hiding in that area for officer safety purposes. After he confirmed that no one was in the weeds on the south side of the house, Agent Whitzel returned to the back yard on the west side of the house.

11. The back yard on the west side of the house was covered in dry grass and weeds no taller than three inches. (Gov't Exs. 6 and 8.) The open-sided shade canopy was located in the back yard on the west side of the house. (*Id*.) The canopy consisted of a gray fabric roof over a four legged metal frame. (*Id*.) The four sides of the canopy were open for a vertical distance of approximately three feet between the ground and the fabric roof. (*Id*.) The canopy was approximately eight feet wide and eight feet deep. (Gov't Ex. 8.)

12 A go-cart, a lawn mower, and a chair were in plain view under the canopy. (Gov't Exs. 6, 8, 9, 10.) The chair was located less than two feet from where the right rear wheel of the go-cart would have been. (Gov't Ex. 10.) However, the right rear wheel of the go-cart had been removed and it appeared as if someone had been working on the go-cart. (*Id*.) On the chair was a brown camouflage tool bag that was also in plain view. (Gov't Exs. 8, 9, 10, 11, and 12.) Agent Whitzel began to walk around the canopy from the south. (*Id*.)

13.     Agent Whitzel looked at the go-cart as he walked around the canopy and observed a smoldering cigarette butt in the dry grass between the chair and the go-cart.  (Gov't Exs. 9, 10, and 11.)  Agent Whitzel moved toward the cigarette butt because he saw smoke and he wanted to confirm that the cigarette butt was lit and was the source of the smoke.  The smoldering cigarette butt was a Marlboro.

14.     As he moved near the chair, Agent Whitzel saw the handle of a revolver in the partially-open tool bag.  (Gov't Ex. 12.)  The tool bag was sitting on the chair, which was about one foot from the smoldering cigarette butt.  (Gov't Ex. 12.)  The chair was located at the outer edge of the canopy and the back of the chair was not under the canopy.  (Gov't Ex. 10.)  Agent Whitzel had a clear view of the objects under the shade canopy including the tool bag on the chair at the edge of the canopy.  (*Id*.)  Agent Whitzel saw the black frame portion of the butt of the handgun and a portion of the wood grip.  (Gov't Exs. 12 and 13.)  Agent Whitzel immediately recognized that the object was a handgun.  (*Id*.)

15.     The dimensions of the tool bag were approximately fourteen inches long by eight inches wide by eight inches deep.  (Gov't Exs. 9, 10, 11, and 12.)  The bag was made from pliable material and had a carrying handle in the center of the lid.  (*Id*.)  The lid of the tool bag was unzipped and arched, or "taco shaped," so that a portion of the interior was visible and an observer could see the side of the tool bag where the butt of the revolver was located.  (*Id*.)  With the lid partially open, Agent Whitzel was able to see the butt of the handgun inside the bag.  (*Id*.)

16.     Agent Whitzel moved the partially open lid of the bag and saw the entire handgun, which he immediately recognized as a revolver.  Agent Whitzel notified Sergeant Leos that he had found a revolver.

17. A law enforcement officer asked Defendant about the firearm in the back yard and Defendant denied knowledge of the firearm.

18. Defendant was a felon. Agents received information that Defendant had been staying at 209 Fabian Road with his girlfriend. Defendant was a suspect in a shooting that occurred two days prior in front of the residence at 209 Fabian Road. After the shooting victim was airlifted to a hospital in Lubbock, Texas, the victim gave a statement identifying Defendant as the shooter. Law enforcement officers had canvassed the area of the shooting and found no shell casings, which indicated that a revolver was used in the shooting. Agents suspected that the revolver in the tool bag was the weapon used in the shooting.

19. Agent Ortega drafted a search warrant affidavit and agents obtained a search warrant for the house and its curtilage at 209 Fabian Road to search for firearms and other evidence. (Gov't Ex. 14.)

20. The agents conducted a search pursuant to the warrant and seized the firearm pursuant to the search warrant. (*Id.*)

## CONCLUSIONS OF LAW

1. The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. Generally, the Fourth Amendment requires that police procure a warrant before searching or seizing property. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). However, the plain view doctrine justifies the seizure of incriminating evidence in the absence of a warrant describing it. *Horton v. California,* 508 U.S. 128, 133 (1990). When evidence is in plain view during the execution of a warrant, neither the observation of the

evidence nor the seizure of the evidence involve any additional invasion of privacy. *Id.* at 133–34; *see also Arizona v. Hicks*, 480 U.S. 321, 325 (1987).

2. Under the plain view doctrine, incriminating evidence may be seized, even though the evidence is unrelated to the offense that justified the search, so long as (1) the law enforcement officer is lawfully located in a place from which the object can be plainly seen; (2) the incriminating character of the object is immediately apparent; and (3) the law enforcement officer has a lawful right of access to the object. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993); *Horton*, 496 U.S. at 136–37.

3. In this case, Agent Whitzel was lawfully present in the back yard and he had a clear view of the objects under the canopy as well as the tool bag located at the edge of the canopy. Agent Whitzel saw the cigarette butt smoldering in the dry grass between the chair and the go-cart. The tool bag was unzipped and the lid was a folded in an arch shape so that an observer could see the side of the tool bag where the butt of the revolver was located. The revolver was in plain view in the partially-open tool bag. In light of Defendant's felony convictions, the incriminating character of the firearm was immediately apparent. Because the tool bag was partially open, Agent Whitzel had a lawful right of access to the firearm.

4. In his reply brief, Defendant argues that Agent Whitzel was not in a lawful position when he observed the firearm. (Doc. 32.) More specifically, Defendant contends that Agent Whitzel "had no investigatory or legal reason whatsoever to stroll around the backyard." (*Id.*) The Supreme Court explained in *Horton*, that it is "an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton*, 496 U.S. at 136. "So long as this prerequisite is satisfied, however, it does not matter that the

officer who makes the observation may have gone to the spot from which the evidence was seen with the hope of being able to view and seize the evidence." *Kentucky v. King*, 563 U.S. 452, 462–63 (2011). "The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure." *Horton*, 496 U.S. at 138. Instead, the Fourth Amendment requires only that the steps preceding the seizure be lawful. *See Id.* Agent Whitzel was lawfully present in the back yard and he saw smoke near a cigarette butt in dry grass near a disassembled go-cart that might have contained gasoline. Under these circumstances, it was reasonable for Agent Whitzel to ascertain the source of the smoke. In that Agent Whitzel was lawfully present in the back yard, the discovery of the gun found in the partially open tool bag was justified under the plain view doctrine. *See United States v. Sells,* 463 F.3d 1148, 1161 (10th Cir. 2006).

     5.    It bears underscoring that the firearm was not seized pursuant to the plain view doctrine; it was seized pursuant to a search warrant. Apart from the information about the discovery of the revolver in the tool bag, the search warrant affidavit recounted the following facts: (1) Defendant had a federal arrest warrant; (2) agents received a tip that Defendant had been staying with his girlfriend at 209 Fabian Road; (3) agents discovered and arrested Defendant at the residence; (4) two days before, Mike Portillo had been shot in front of 209 Fabian Road; (5) Mr. Portillo had given a statement that Defendant shot him after an argument about money. (Doc. 21-1). Based on this information, probable cause supported the search warrant for the residence and its curtilage independent of the information about the discovery of the revolver in the tool bag. In other words, the search warrant would be valid even if the information about the revolver were excluded from the search warrant. For this reason, the firearm was seized pursuant to a valid search warrant.

6. In its response brief, the United States argued that Defendant lacked standing to challenge the search of the tool bag and seizure of the firearm because he disclaimed ownership of the tool bag. A defendant has standing if law enforcement agents violate his reasonable expectation of privacy. *Minnesota v. Carter*, 525 U.S. 83, 87–88 (1998). The United States contends that Defendant did not have a reasonable expectation of privacy in the tool bag because he disclaimed ownership of the tool bag. The problem with this argument is that Defendant did not disclaim ownership of the tool bag. The United States relies exclusively on cases where the defendant disclaimed ownership of the container rather than its contents. *See United States v. Tubens*, 765 F.3d 1251, 1256–57 (10th Cir. 2014) (defendant who disclaimed ownership of a bag that contained drugs lacked standing to challenge search); *United States v. Magnum*, 100 F.3d 164, 170 (D.C. Cir. 1996) (defendant denied ownership of a knapsack that contained a gun); *United States v. Torres*, 949 F.2d 606, 608 (2d Cir. 1991) (defendant denied ownership of a shoulder bag containing drugs); *United States v. Thompson*, 359 F. Supp. 2d 862, 866–67 (D.N.D. 2005) (defendant denied ownership of a suitcase with drugs); *United States v. Borrero*, 770 F. Supp. 1178, 1191–92 (E.D. Mich. 1991) (defendant claimed he found the bag on a plane).

7. In this case, the Defendant, unlike the defendants in the cases cited by the United States, did not disclaim ownership of the tool bag. At the hearing, Agent Martinez testified that "[t]he sergeant asked [Defendant] about the gun in the back yard and he's like I don't know what you're talking about. He pretty much denied any – being back there and having any knowledge of the gun being back there." Even though the United States presented double hearsay evidence that Defendant may have disclaimed knowledge of the gun, the United States presented no evidence that Defendant disclaimed ownership of the tool bag. This subtle difference distinguishes the matter at hand from the authorities cited by the United States.

9

8. The evidence adduced at the hearing establishes that Defendant has standing to challenge the search of the tool bag.  Defendant was apprehended within twenty feet of the go-cart while he was walking away from the go-cart.  The partially-open tool bag was on the chair less than two feet away from the go-cart.  A smoldering Marlboro cigarette was between the go-cart and the chair, and Defendant had an open pack of Marlboro cigarettes in his pocket.  Based on these facts it may be fairly inferred that Defendant had been using the tools in the bag to work on the go-cart.  Under these circumstances, Defendant has standing to raise a Fourth Amendment challenge.

9. Notwithstanding the fact the Defendant has standing, his motion must be denied.  The firearm was discovered pursuant to the plain view exception to the warrant requirement and the search warrant was supported by probable cause independent of the information about the firearm.  Defendant's arguments to the contrary are unpersuasive.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress (Doc. 21) is **DENIED**.

                                                                            **ROBERT C. BRACK**
                                                                            **UNITED STATES DISTRICT JUDGE**