IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                              No. 5:15-CR-3947 RB

MIA COY CAMPBELL,

       Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on the Government's Notice of Other Crimes or Bad Acts Pursuant to Rule 404(b) and Impeachment Evidence Under Rule 609(a)(1) (Doc. 44) and the defendant's Motion to Strike Witness Portillo and Motion in Limine (Doc. 45). The Government charged the defendant, Mia Coy Campbell, with being a felon in position of a firearm. Four working days before trial, the Government filed a Notice of Other Crimes or Bad Acts Pursuant to Rule 404(b) and Impeachment Evidence Under Rule 609(a)(1). (Doc. 44.) Having considered the submissions and arguments of counsel and being otherwise fully advised, the Court **GRANTS** the Motion to Strike Witness Portillo and Motion in Limine, and **EXCLUDES** the evidence involving possession of a machinegun on July 30, 2015.

## I.     BACKGROUND

Mr. Campbell faces trial on Tuesday, March 22, 2016 for being a felon in possession of a firearm. (Doc. 44 at 1.) On September 24, 2015, several law enforcement agents from the Pecos Valley Drug Task Force, the Federal Bureau of Investigation, and the United States Marshal Service sought to arrest Mr. Campbell on a separate charge. (Doc. 37 at 3.) The agents looked

for him, unsuccessfully, at two residences and then received information that he might be living at 209 Fabian Road in Carlsbad, New Mexico, with his girlfriend.   (*Id.*; Doc. 44 at 3.)   The agents found Mr. Campbell in the backyard and arrested him.   (Doc. 37 at 3.)   Agents checked the backyard for safety, and during their search, they found a revolver in a partially-open tool bag. (*Id.* at 5.)

The Government seeks to introduce evidence that two days earlier, Mike Portillo was shot at the same residence.   (Doc. 44 at 3.)   Mr. Portillo was shot once in the back.   Mr. Portillo told a police detective that Mr. Campbell shot him during an argument over money.   (*Id.*)   The same police detective processed the crime scene, and he did not find a shell casing in the area.   (*Id.*) According to the detective, the absence of a shell casing "indicated that the firearm used in the shooting was a firearm that did not eject shell casings, such as a revolver."   (*Id.*)   Mr. Campbell has not been charged in connection with this incident.   (Doc. 45 at 2.)   Moreover, the Government currently cannot locate Mr. Portillo and he is unlikely to testify at trial.

The Government also seeks to introduce evidence that Mr. Campbell knowingly possessed two other firearms.   On July 30, 2015, police responded to a call involving a shooting at a different Carlsbad home.   (Doc. 44 at 2.)   One of Mr. Campbell's "lifelong friend[s]" lived there, and testified that he and Mr. Campbell had an argument earlier that evening.   (*Id.*)   According to the friend, Mr. Campbell left but returned about an hour later in a white Lexus and fired numerous rounds from an automatic rifle towards the house.   (*Id.*)   Police found bullet holes in two vehicles parked in the driveway and another bullet hole in the front door of the home.   (*Id.*)   Police also found twenty spent shell casings near the front door.   (*Id.*)   The next day, Mr. Campbell tried to sell a rifle.   (*Id.*)   Mr. Campbell asked a man to sell the rifle, telling him that the rifle was a "full auto" and that Mr. Campbell had emptied a whole clip into a house in Carlsbad in three seconds.

2

(*Id.*).   Police later seized the rifle.   (*Id.*)

On August 4, 2015, police stopped Mr. Campbell for an outstanding arrest warrant.   (Doc. 44 at 3.)   Mr. Campbell was driving a white Lexus and was the only person in the vehicle.   (*Id.*)   After Mr. Campbell was arrested, officers found a black semi-automatic pistol in a bag in the front passenger seat.   (*Id.*)   Mr. Campbell faces charges for possession of both the automatic rifle and the pistol in *United States v. Campbell*, Case Number 15-CR-3765-RB.   (15-CR-3765-RB Doc. 1 at 2.)

On March 16, 2016, the Government filed notice that it intended to introduce evidence of these incidents, pursuant to Rule 404(b) of the Federal Rules of Evidence, and other previous convictions for impeachment, pursuant to Rule 609(a)(1) of the Federal Rules of Evidence.   (Doc. 44.)   Despite the untimely notice, the pistol found on August 4, 2015 is admissible pursuant to Rule 404(b).   The machine gun incident on July 30, 2015 is inadmissible because it is unduly prejudicial and insufficiently probative to survive an analysis pursuant to Rule 403 of the Federal Rules of Evidence.   Although the alleged shooting of Mr. Portillo is highly probative, it is also unduly prejudicial and thus must be excluded pursuant to Rule 403.

## II.    TIMELINESS

The Government's notice did not comply with the Court's discovery order.   (Doc. 45 at 2.)   Courts, however, must impose the "least severe sanction that will accomplish" discovery goals. *United States v. Nichols*, 169 F.3d 1255, 1268 (10th Cir. 1999) (quoting *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988)).   To determine the appropriate sanction, courts consider "(1) the reasons for the delay in producing the requested materials, including whether or not the party acted in bad faith; (2) the extent of prejudice to the other party as a result of the delay; and (3) the feasibility of curing the prejudice with a continuance."   *Id.* (citing *Wicker*, 848 F.2d at 1061).

Here, the Court required the Government to disclose Rule 404(b) information to Mr. Campbell "at least five (5) working days prior to trial." (Doc. 16 ¶ 7.) The Government provided notice only four days before trial. (*See* Docs. 44 (filed on Wednesday, March 16, 2016), 33 (setting trial for Tuesday, March 22, 2016).) Excluding the evidence, however, is overly severe under these circumstances. Additionally, Mr. Campbell has failed to show prejudice to justify a continuance. Thus, the Court will consider the merits of the arguments.

## III.   ADMISSIBILITY OF OTHER ACTS

### A.  *Intrinsic Act*

Although not addressed in the title of the notice, the Government first argues that the shooting of Mr. Portillo is not subject to a Rule 404(b) analysis because it is intrinsic, rather than extrinsic evidence. "An uncharged act may not be extrinsic if: (1) it was part of the scheme for which a defendant is being prosecuted . . . , or (2) it was inextricably intertwined with the charged crime such that a witness' [sic] testimony would have been confusing and incomplete without mention of the prior act." *United States v. Johnson*, 42 F.3d 1312, 1316 (10th Cir. 1994) (internal quotations omitted). In *Johnson*, the court determined that evidence of uncharged methamphetamine distribution was part of the same scheme as the charged conspiracy to distribute methamphetamine because the alleged distribution occurred during the same timeframe as the alleged conspiracy. *Id.* The court also determined that the distribution was "inextricably intertwined" with the conspiracy because it was a natural part of the witness's account of the circumstances surrounding the conspiracy. *Id.*

The argument here differs significantly from that in *Johnson*. Whereas evidence that a defendant distributed methamphetamine could easily be part of the same scheme as conspiring to distribute methamphetamine during that same time period, *see Johnson*, 42 F.3d at 1316, evidence

4

that Mr. Campbell used a gun in a shooting is not part of the same scheme as possessing a gun that might be the same one two days later.   The crimes are less clearly related and the time periods are not the same.   Moreover, the Government has not indicated that Mr. Portillo would testify on anything other than the shooting two days prior.   If the shooting is not part of the same scheme for owning the revolver, his testimony would not be intrinsically intertwined with any other testimony involving circumstances surrounding Mr. Campbell's current charge.   *See id.*   Finally, even if the evidence is intrinsic, it would be subject to an analysis pursuant to Rule 403 of the Federal Rules of Evidence.   *See supra* Section III(B).

### B.  Extrinsic Evidence

Rule 404(b) prohibits "[e]vidence of a crime, wrong, or other act" to prove a defendant's "character in order to show that on a particular occasion the [defendant] acted in accordance with the character."   Evidence of a wrongful act may be admissible, however, "for another purpose," such as proving knowledge or absence of mistake, Fed. R. Evid. 404(b), as long as sufficient evidence exists "for a reasonable juror" to find that the act occurred, *Huddleston v. United States*, 485 U.S. 681, 689–90 (1988).   Courts allow this evidence if it (1) is introduced for a proper purpose; (2) is relevant; (3) survives a Rule 403 analysis; and (4) is subject to a limiting instruction upon the defendant's request.   *United States v. Diaz*, 679 F.3d 1183, 1190 (10th Cir. 2012).

Rule 403 requires exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."   "The trial court has broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value."   *Johnson*, 42 F.3d at 1315.   Even so, exclusion is "an extraordinary remedy and should be used sparingly." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001).   Exclusion is only proper if the evidence "makes a conviction more likely because it provokes an emotional response in the jury or

otherwise tends to affect adversely the jury's attitude toward the defendant *wholly* apart from its judgment as to his guilt or innocence of the crime charged."   *Id.*

Two cases directly address whether evidence of prior gun possession is admissible in a prosecution for being a felon in possession of a firearm.   In *United States v. Moran*, 503 F.3d 1135, 1135, 1144 (10th Cir. 2007), the Court allowed evidence of a nine-year-old conviction for being a felon in possession of a firearm to prove knowledge because "evidence of the conviction had a 'tendency to make the existence of' [the defendant's] knowledge of the rifle in the present case 'more probable . . . than it would be without the evidence.'"   *Id.* (quoting Fed. R. Evid. 401). Thus, "when a defendant places his intent at issue, the defendant's prior acts of weapon possession are relevant for the proper purpose of demonstrating the charged act of firearm possession was knowingly undertaken."   *McGlothin*, 705 F.3d at 1263 (footnotes omitted).   The court further held that "the prior act was sufficiently similar to have probative value" and the defendant presented no reason to conclude that the evidence was unduly prejudicial.   *Moran*, 503 F.3d at 1145–46.

In *McGlothin*, the court reviewed for plain error the trial court's admission of a previous incident where the defendant repeatedly hit a woman in the head with a pistol that resembled the Glock in the possession charge.   *McGlothin*, 705 F.3d at 1259.   The Government presented significant evidence that the gun used in the battery was the same as the gun in the possession charge.   The woman testified that the defendant was the person who attacked her and the Glock in the possession offense looked like the pistol he had used.   *Id.* at 1259 n.7.   A detective also testified that the pistol functioned like a Glock when its clip fell to the floor during the beating. *Id.* at 1259 n.8.   Although the court acknowledged that the incident "had the potential to be unduly prejudicial[,]" the evidence survived the 403 analysis because it was "exceptionally probative" and

6

the government's prejudice was not overly inflammatory.   *Id.* at 1266.   Relevantly, the evidence was admissible because the government presented "exceptionally probative evidence" without using the incident to inflame the jury.

Here, the Government contends that three incidents: the machine gun incident on July 30, 2015, the semiautomatic pistol incident on August 4, 2015, and the shooting of Mr. Portillo on September 22, 2015 are admissible to show knowledge and absence of mistake pursuant to Rule 404(b).   (Doc. 44 at 6–8.)   Knowledge and absence of mistake are both proper purposes to admit such evidence.   *See* Fed. R. Crim. P. 404(b); *Moran*, 503 F.3d at 1144.   The evidence is relevant because knowledge is an element of the offense.   *See Moran*, 503 F.3d at 1144; *McGlothin*, 705 F.3d at 1264.

The machine gun incident fails a 403 analysis because it is both less probative and unduly prejudicial.   The machine gun incident is less probative as to possession of the revolver because it involves different guns.   *C.f. McGlothin* at 1266 (referring to "exceptionally probative" evidence of possession of the same gun).   Conversely, like *McGlothin*, the incident is highly likely to be highly prejudicial.   *See id.* (allowing the beating incident on plain error review because it was "exceptionally probative").   The jury is likely to be frightened and inflamed by evidence that Mr. Campbell shot at a "lifelong friend" with a machine gun after an argument.   (Doc. 44 at 2.)

The pistol possession, on the other hand, survives the Rule 403 analysis.   The possession "has a tendency" to make Mr. Campbell's knowledge of the revolver at issue here "more probable . . . then it would be without the" charge.   *Moran*, 503 F.3d at 1144.   As a possession charge, it also does not risk the same undue prejudice that shooting a machine gun into a residence risks. Consequently, evidence of Mr. Campbell's possession of the semi-automatic pistol is admissible.

Perhaps most challenging, the shooting of Mr. Portillo, must be excluded because the jury

7

would be more likely to convict Mr. Campbell based on the emotion that evidence of attempted murder would provoke, wholly apart from Mr. Campbell's guilt or innocence of possession of the revolver. *See Johnson*, 42 F.3d at 1315. Even if Mr. Portillo was available to testify, the evidence would be far less probative than that in *McGlothin*. Whereas the witness in *McGlothin* testified that she saw the gun, identified significant attributes of the gun, and testified to its similarity to the Glock at issue, *McGlothin*, 705 F.3d at 1259, here, Mr. Portillo first refused to identify his attacker, made other inconsistent remarks, and never saw a gun. Given the limited strength of this testimony, both to identify the gun or even identify Mr. Campbell's possession of any gun, the incident cannot withstand a Rule 403 analysis. The relevance isn't substantially outweighed by the risk of undue prejudice where the jury is likely to care more about convicting a person who shot someone in the back then about possession of a revolver. Conversely, if Mr. Portillo is unavailable to testify, the evidence would have to be so constrained to avoid hearsay that it would hardly be relevant let alone sufficiently probative to survive a Rule 403 analysis. The Government's evidence would boil down to the fact that a shooting allegedly occurred near the residence where Mr. Campbell was found two days later and that the detective didn't find a casing which could, among other explanations, indicate that a revolver was involved. This simply is not probative enough to justify admitting evidence of a shooting in a possession trial. As such, the evidence is not admissible, with or without testimony from Mr. Portillo.

## IV.   CONCLUSION

Although the Government's notice is untimely, excluding the evidence would be too severe to punish the discovery violation. As for the merits of the motion, possession of the pistol on August 4, 2015 is admissible. The probative value of the machine gun incident and the shooting of Mr. Portillo, however, are "substantially outweighed by the danger of unfair

prejudice."  *Johnson*, 42 F.3d at 1315.

   **THEREFORE**,

   **IT IS ORDERED** that Mr. Campbell's Motion to Strike Witness Portillo and Motion in

Limine (Doc. 45) is **GRANTED** and the evidence of the machine gun incident on July 30, 2015 is

**EXCLUDED**.


   _____
   **ROBERT C. BRACK**
   **UNITED STATES DISTRICT JUDGE**